## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL ADRIAN CAJILEMA HIDALGO, | No. 4:26-CV-00686 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| CRAIG LOWE, *et al.*, | |
| Respondents. | |

### MEMORANDUM OPINION

### APRIL 1, 2026

## I.   BACKGROUND

Angel Adrian Cajilema Hidalgo, currently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), has filed this 28 U.S.C. § 2241 petition seeking his release from ICE custody.[1] Hidalgo is currently detained at the Pike County Correctional Facility within the Middle District of Pennsylvania.[2]

Hidalgo, a citizen and native of the Republic of Ecuador, entered the United States of America in 2000 at the age of five.[3] After having lived in the United States without lawful authority for some time, in 2012 Hidalgo obtained Deferred Action for Childhood Arrivals ("DACA"); that authorization was revoked in 2025 after

---

[1]   Doc. 1.
[2]   *Id.* at 1-2.
[3]   *Id.* at 4.

Hidalgo was convicted in Pennsylvania state court of incident exposure.[4] On April 10, 2025, Hidalgo was arrested by ICE and appears to have been detained without a bond hearing since that date.[5]

In July of 2025, an immigration judge found that Hidalgo was removable from the United States, but issued a cancellation of removal and granted Hidalgo's application for legal permanent residency.[6] That decision was later vacated by the Board of Immigration Appeals, which found that the immigration judge's decision did not allow for meaningful appellate review, and the matter was remanded for further factfinding.[7]

In March of 2026, Hidalgo filed this § 2241 petition asserting that he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).[8] Specifically, Hidalgo argues that, because he was detained inside of the United States, his detention is governed by 8 U.S.C. § 1226(a), and the Government is incorrect that 8 U.S.C. § 1225(b)—which provides for mandatory detention without a bond hearing— applies to him.[9] The failure to provide him with a bond hearing, Hidalgo argues, violates his due process rights.[10]

---

[4]   *Id.* at 5.
[5]   *Id.* at 5-6.
[6]   *Id.*
[7]   *Id.* at 6.
[8]   *See* Doc. 1.
[9]   *Id.* at 6-12.
[10]   *Id.* at 12-16.

Respondents contend that § 1225(b) applies to all individuals who are not inspected and lawfully admitted to the country, regardless of whether they manage to enter the country surreptitiously, and Hidalgo is therefore subject to mandatory detention without a bond hearing.[11] Moreover, Respondents assert that Hidalgo's continued detention without a bond hearing does not violate his due process rights.[12]

The Court has considered the arguments. For the reasons discussed below, the petition will be granted.

## II.   DISCUSSION

Hidalgo brings his claims pursuant to 28 U.S.C. § 2241, which provides, as relevant here, that it applies to any individual who "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States."[13] As the Supreme Court of the United States has emphasized, when ICE detainees challenge "their confinement" pending removal, "their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in" a 28 U.S.C. § 2241 petition.[14]

The determination of whether Hidalgo is improperly detained requires an examination of two separate provisions in immigration law: 8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(a). Section 1225(b) provides that "in the case of an alien who is an

---

[11]   Doc. 5 at 18-40.
[12]   *Id.* at 41-44.
[13]   28 U.S.C. § 2241(c)(2).
[14]   *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025).

applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings.[15] In contrast, 8 U.S.C. § 1226(a) states only that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." In accordance with that language, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."[16] These two provisions therefore provide for opposite outcomes: under § 1225(b) Hidalgo may not receive a bond hearing, but under § 1226(a) he must receive such a hearing. The Court therefore examines each statute to determine which applies to Hidalgo.

Turning first to 8 U.S.C. § 1225, as the Honorable Karoline Mehalchick recently observed, "[t]o trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted."[17] "Section 1225(b)(2)(A) applies only to an alien who is both an 'applicant for admission' and 'seeking admission.'"[18]

---

[15]  8 U.S.C. § 1225(b)(2)(A).
[16]  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).
[17]  *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *4 (M.D. Pa. Dec. 22, 2025).
[18]  *Id.*

4

Section 1225 defines "applicant for admission" since "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."[19] While applicable federal law does not define "alien seeking admission," courts construe the plain language of "seeking admission" to describe "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry."[20]

As courts have observed, such a "reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*,"[21] wherein the Supreme Court "noted [that] § 1225(b) applies primarily to aliens seeking entry into the United States."[22] That reading of "seeking admission" further "preserves a distinction between 'seeking admission' and the separate term 'applicant for admission,' ensuring that each phrase carries independent meaning."[23] In sum, a plain reading of § 1225(b) demonstrates that it applies to individuals who are attempting to enter the United States, not those already within the country.

---

[19]   8 U.S.C. § 1225(a)(1).
[20]   *Ramirez-Montoya*, 2025 WL 3709045, at *4 (collecting cases).
[21]   *Id.*
[22]   *Jennings*, 583 U.S. at 297.
[23]   *Ramirez-Montoya*, 2025 WL 3709045, at *4.

With respect to § 1226, the Supreme Court has been explicit that "§ 1226 applies to aliens already present in the United States."[24] That Section "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings" and "permit[ting] the Attorney General to release those aliens on bond."[25] Therefore, while § 1225 applies to individuals detained while entering or attempting to enter the country, § 1226 applies generally to those who are detained within the country.

These definitions create dual tracks: if an individual is detained attempting to enter the country illegally or while otherwise presenting themselves for inspection and entry, they are subject to mandatory detention pursuant to § 1225. If they are arrested after having already entered the country, they are subject to detention under § 1226 and are entitled to a bond hearing.

Applying that distinction here, Hidalgo must be detained pursuant to § 1226 and is therefore entitled to a bond hearing. Hidalgo entered the United States in the year 2000 and, at that time, he could reasonably have been construed as seeking admission and therefore as an individual governed by § 1225.[26] However, he was not arrested and detained until April of 2025[27] after having resided "in the United States for an extended period of time"; accordingly he is no longer an seeking

---

[24]  *Jennings*, 583 U.S. at 303.
[25]  *Id.*
[26]  Doc. 1 at 4.
[27]  *Id.* at 5.

admission and "§ 1226(a), not § 1225(b)(2)(A), applies to" Hidalgo during his detention.[28] Because § 1226(a) applies, mandatory detention is not warranted, and he must be provided with a bond hearing.[29]

Having determined that Hidalgo is being detained under the wrong section of immigration law and is improperly being denied a bond hearing, the Court must next determine whether Respondents' actions violate Hidalgo's Fifth Amendment Due Process rights.[30]

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property without due process of law." That Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,"[31] and therefore individuals "facing removal are entitled to due process."[32]

---

[28]   *Ramirez-Montoya*, 2025 WL 3709045, at *5.
[29]   *See, e.g., Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) (finding in similar circumstances that § 1226(a) applies).
[30]   Magatte brings claims under the Fifth Amendment and violations of the applicable statute. Doc. 1 at 16-20. Because this Court will resolve the issue on the Fifth Amendment question, it need not address the remaining claim.
[31]   *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).
[32]   *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001).

This Court applies the balancing test developed in *Mathews v. Eldridge*[33] to determine whether the failure to provide Hidalgo with a bond hearing under § 1226(a) violates his due process rights.[34] Under that test, courts must consider

> three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[35]

The first factor weighs heavily in favor of concluding that Petitioners' actions have deprived Hidalgo of his due process rights, as "[f]reedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."[36] The second factor likewise favors Hidalgo, "as he is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing."[37]

Finally, as other courts have observed, the Government does have an interest in detaining noncitizens to ensure "'the appearance of aliens at future immigration

---

[33] 424 U.S. 319, 335 (1976).

[34] *Cf. Sewak v. I.N.S.*, 900 F.2d 667, 674 (3d Cir. 1990) (applying that test to determine whether applicable deportation regulations were capable of protecting an individual's due process rights).

[35] *Mathews*, 424 U.S. at 335.

[36] *Zadvydas*, 533 U.S. at 690. *See also Patel*, 2025 WL 3516865, at *6; *Ramirez-Montoya*, 2025 WL 3709045, at *6.

[37] *Patel*, 2025 WL 3516865, at *6 (quoting *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025)).

proceedings' and 'prevent[] danger to the community.'"[38] These interests certainly justify detaining individuals in appropriate circumstances. But they cannot weigh in favor of Respondents when they are denying wholesale a bond hearing—the very purposes of which is to establish whether an individual "poses [a] flight risk [or a] danger to the community."[39] In balancing these three factors then, it is clear that Hidalgo's continued detention without a bond hearing violates his due process rights. Consequently, the Court will grant his § 2241 petition.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that Respondents have violated Hidalgo's due process rights by detaining him without a bond hearing. Accordingly, his petition will be granted, and the Government will be required to provide Hidalgo with a bond hearing or release him from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[38]    *Soto*, 2025 WL 2976572, at *8 (quoting *Zadvydas*, 533 U.S. at 690).
[39]    *Ramirez-Montoya*, 2025 WL 3709045, at *4 (internal quotation marks omitted).